May it please the Court, Lynn McGinnis, Deputy Attorney General from the California Attorney General's Office. Could you speak a little louder, please? Lynn McGinnis, Deputy Attorney General from the California Attorney General's Office for the Appellant, which is unusual. I'm not used to sitting on this side. Right. It's a better window view. Yeah, it really is. I didn't know whether to put my books over here or over here. This is really very simple, as we pointed out in the opening brief. There was an officer who testified in the People's Case-in-Chief that Mr. Smith had a usable amount of heroin. The officer testified that he based that opinion on a number of factors, including a presumptive test, his own training and experience, and the weight of the package. And he gave his opinion. Now, the prosecution could have just rested at that point, and that would have been sufficient evidence to sustain the judgment. The prosecution also introduced quite a bit of circumstantial evidence to support the conviction, including the fact that there were two bindles of the heroin, the fact that the officer pulled out a portion of it. The jury actually saw the package, and unfortunately, we didn't have a photograph of the package that was transmitted to the California Court of Appeals, so we couldn't transmit anything to this court because it wasn't part of the record. We also have a defendant who tries to swallow it, a defendant with a syringe, and a defendant who runs from the scene. Now, granted, we had a criminalist who testified that she later tested, and when you look at the timeline of this, the officer was able to separate some of this out when he arrested the defendant or petitioner in May of 2002, or 2001. And by the time the criminalist got the stuff, it was a bunch of, quote, gobbledygook in August, and she was unable to do much with it, so she just had to weigh the whole thing. And on cross-examination, she was asked whether there was a usable amount of heroin, and she said, I don't know. And then on redirect examination, she was asked, do you know anything about usable amounts? And she said, no, that's not my area of expertise. Now, what the district court did was take the criminalist's testimony and say, because she doesn't know what a usable amount is, there's no usable amount. Well, basically, what that amounts to is the district court weighing the evidence here, and I just don't understand how the district court, with all due respect to the district court, got here. I mean, when I look at this case, we could have called the officer, and then five criminalists who testified that the officer had no idea what he was talking about. He doesn't know what he's talking about because this is a bunch of gobbledygook, and we can't separate the heroin from the bindles or the heroin from the saliva, and we still would have won the case on appeal because the jury is entitled to credit the officer's testimony over any contrary testimony. There was no challenge to Deputy Byerly's testimony of usable quantity, was there? There was no challenge to that testimony. What happened is when he started talking about his training and experience in determining what was heroin, what was not, there was a foundation challenge to his expertise, and that was overruled by the trial court, but on direct appeal to the California Court of Appeal, there was no claim that that was improperly overruled, and even if that challenge had been successful, as the court knows, erroneously admitted evidence comes in. If the court had been improperly ruled that the foundation was not laid, but in this case the only challenge was prior to his testimony about usable amount, and it had to do with his training and experience in identifying what heroin was. So I don't really have much to add other than what's in the briefing. I want to reserve most of my time to respond to what... You may do that. ...to what Apelli has to say, and with that, I will reserve my remaining five minutes for rebuttal. You're welcome to do so. Mr. Levy? Good morning. May it please the Court. Jonathan Levy appearing on behalf of the Apelli, Robert Smith. Your Honors, Judge Pregerson's detailed and well-reasoned decision granting habeas relief to Mr. Smith should be affirmed. We have de novo review. And I have as much trouble as the State's lawyer does in figuring out how we got to where we are, because Officer Byerly specifically testified that based on his training and experience, he opined that there was a usable amount of heroin, and the chemist confirmed that there was in fact heroin, that it wasn't a usable amount of, you know, cheese or something that wasn't heroin. And combined with the circumstantial evidence where he tried to basically eat the evidence and have the syringe that would be used for injecting these drugs, the jury didn't have to find him guilty, but I have difficulty seeing why there wasn't sufficient evidence. Okay. Well, what Judge Pregerson found was there was no evidence at all as to the amount of heroin that was actually in the baggie. That doesn't matter. It only has to be a usable amount. It doesn't have to be a specific amount. It does not have to be a specific amount, but it's not as if it can be any amount. It has to be a usable quantity. Correct. But if somebody just, what if it never got weighed? What if somebody said, well, it was the size of my fist? You know, it doesn't, there's no requirement in the law that there be a specific weight. And it also doesn't have to be a lot as long as it is usable. That is more than a trace that you would find on a dollar bill that you carry in your wallet and say, oh, my gosh, there's a trace of, you know, cocaine on this dollar bill. So I really don't understand how one could say that Byerly's testimony is insufficient. Okay. Well, the rule in California, and this is from Palaszczuk and Rubicalba, it must be in a form and quantity that can be used. Okay? And what do we know from the testimony? It was a purely liquid form. We don't know, in fact, how much of this liquid that was in this baggie was, in fact, heroin. We know it was, what, four grams of whatever you want to call it. And we have an officer familiar with drugs and heroin who was observed, saw, had, and said that it was a usable quantity. Plus, you have all the other circumstantial evidence around it. Well, Your Honor, with respect, I mean, the officer, could have not even looked at it and said, I thought it was a usable quantity. Could have. It has to be more than simply the officer says so, so it is. Where do you get that rule? There's a witness here who has described his training and his experience, and has asked specifically the question about his opinion on usable quantity. There's no objection interposed. And he says, in my opinion, it was a usable quantity. Now, what case says that that is not allowable or not sufficient other than the decision below here? There's certainly no case that says that he can't opine as to that issue. But what did he testify to? He testified that I weighed it, and it was four grams of heroin. And then he said, what is your opinion with regard to whether or not it was a usable quantity? Answer, it was a usable quantity. Well, that's right. And the argument, then, that the State then made was that there were, it was four grams of heroin, and four grams of heroin was a usable quantity. But we know for a fact. But he didn't testify that. An argument isn't the testimony. Our question is whether there was evidence, not what the State argued. Well, Your Honor, with respect, I think the passage you just cited to, he indicated that there was four grams of heroin, and that was a usable quantity. And that's what he was testifying to. But we know for a fact, based on the State's evidence, that it could not have been four ounces, four grams, rather, was not the weight of the heroin. The scientists testified, we have no idea how much heroin was, in fact, in this baggie. No, but his earlier testimony did acknowledge that there was a lot of saliva and substance. So I don't think the only. Along with some, Your Honor, I'm sorry. I don't think the only. Along with some plastic bindles. There was a number of things in this baggie. That's right. And he said that. And so his, I just don't understand how, well, I guess I've said what I've said. But. No. And I certainly respect Your Honor's opinion. But what Judge Frederickson found was there's simply no evidence as to the amount of heroin. And if we have no idea as to the amount of heroin involved, then how can you possibly say it was a usable amount? So if I, if we have no idea, suppose I said, well, you know, it was as big as this set of briefs. It was enormous, but nobody ever weighed it. Would you, you know, would that be enough evidence that there's a usable quantity? There's, I just don't understand the rule that it has to be weighed. Or stated differently, there's more than one way to prove usable quantity. You don't have to specify the exact amount, do you? You do not. But it has to be more than a trace. It has to be, it has to be enough that it can be used in the future. And the fact is, because we have no idea how much heroin was there, that it was mixed in with all of this gobbledygook. Because he tried to eat it, which suggests a knowledge of guilt. Well, yes, but that doesn't suggest that he was aware that you needed to have a usable amount. He admitted that he, in fact, had used heroin that day. So it's not unreasonable to assume that he had used the heroin and he then stuck the baggie that no longer had any real usable heroin on it back in his pocket. And he was scared, and so he then tried to eat it. But it's reasonable to infer all those things. But aren't you kind of forgetting that we're in habeas corpus and Federal Court, and you really have to demonstrate more than, well, you could infer X, Y, Z. Well, yes, you could infer X, Y, Z. That's exactly what Judge Pragerson did. Well, I think what Judge Pragerson said was there simply was no testimony, no evidence to support that there was, in fact, anything more than a trace of heroin because we have no way of knowing. The State can't get away with it. But that totally ignores the officer's testimony. The trial judge was focused on the scientist who could not identify the amount, as you're arguing. The officer didn't identify exactly what the amount was, but he certainly wasn't in a position to observe and testify, apparently without challenge, that this was a usable quantity. How do we ignore that testimony? Well, Your Honor, you say without challenge. The State's own witness came in and said we have no way of knowing if this was a usable quantity. She said at the time she received it she could not separate it and identify it. But that's not what the officer said. They're not inconsistent. One offered an opinion. The other said I can't offer an opinion. No. What the scientist said was I have tested this, and all I can tell you is it tests positive for heroin as to the amount of heroin. And she testified that normally in order to prove these cases, they actually have to separate out the amount of heroin from all of the other things. But didn't she also testify that she had never received training on what a usable quantity meant, and she said I don't determine usable quantity, not my job. So how is that inconsistent with what the officer testified to? Well, Your Honor, the only training one gets with respect to what a usable quantity is, is frankly what the jury was instructed what a usable quantity is, what the case law establishes what a usable quantity is. That's all the officer could testify to as well. Right. But she's, I guess my difficulty with what the district court did here was it took the testimony of someone who said it's not my job to decide usable quantity, I don't even know what that means, and credited her testimony instead of the testimony of the officer who said it is my job to determine usable quantity, I have the training, I have the experience, and here's my considered opinion based on what I saw and what I know. And again, it's our position, and what Judge Pregerson found was that he was not in a position to, in fact, make that opinion, because it was based on nothing. He looked at it and said, yeah, that's usable quantity, even though we know there was no way of determining that, that the scientist tested it, and there was no way of determining it. We don't know that. All we know is that by the time the scientist got it, which is some months later, this stuff's been soaking in all his fluids for another two months. And she couldn't do it. So we don't know what you just said we know. We don't know that the officer didn't know or couldn't see anything there. Well, what we, the officer didn't testify to much. He essentially said that he looked at it, he weighed it, it came out, the entire package came out to 4 grams, and that based on that, he determined it was a usable quantity. But you also have his testimony that it wasn't just a liquid mess. He specifically testified that there was black tar-like substance in the bag at the time that he acquired it out of the defendant's mouth. Well, certainly. As the scientist indicated, too, that this, that it was a, that it was a brown, sticky substance that was primarily liquefied, but that based on everything she could test, she could not make any determination as to the actual amount. And if we, and if the State can't prove it's more than a trace, then it didn't meet its burden. Thank you, Counsel. Thank you, Your Honor. We appreciate your argument. You have a lot of rebuttal time remaining, Ms. McGinnis. Your Honor, I don't think I need it. I would just say it sounds like a great closing argument, but it was a jury question and the jury made its determination. And with that, unless the Court has any further questions that people would submit on the briefing. I don't believe that we do. Thank you, Counsel. We appreciate the spirited arguments on both sides. The case is now submitted.
judges: Zouhary, Fernandez, Graber